# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

**Harry Dull,** *et al.***,**

           *Plaintiffs,*

**v.**                                                         **Case No. 3:14-cv-195**
                                                         **Judge Thomas M. Rose**

**Energizer Personal Care, LLC,** *et al.***,**

           *Defendants.*

---

**ENTRY AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO TRANSFER THE FIRST, SECOND, AND FOURTH CAUSES OF ACTION ALLEGED IN PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT** (DOC. 18) **AND TO DISMISS REMAINING CAUSES OF ACTION.** (DOC 23). **PLAINTIFFS' FIRST, SECOND AND FOURTH CLAIMS ARE DISMISSED. PLAINTIFFS ARE GRANTED UNTIL OCTOBER 2, 2015 TO AMEND THEIR THIRD AND FIFTH CAUSES OF ACTION.**

---

This matter is before the Court for decision on Defendants' Motion to Transfer the First, Second and Fourth Causes of Action Alleged in Plaintiffs' Amended Class Action Complaint (Doc No. 18) and to Dismiss Remaining Causes of Action. Doc. 23.  Plaintiffs Joyce Dull, Thomas Lawson, Jeffrey Taylor, Magdalene Wheeler, Richard Fields, Donald Kearns, Sr., Irene Dunne and Donald Steely ("Class Representatives" or "Retiree Plaintiffs"), on their own behalf and on behalf of all other similarly situated persons, along with IUE- CWA, AFL-CIO ("IUE-CWA") and Local 82173, IUE-CWA, AFL-CIO, ("Local 173") have sued a holding company and its three subsidiaries alleging violations of the Labor Management Relations Act ("LMRA") 29 U.S.C. § 185, and the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.*

The holding company is Missouri-based Energizer Holdings, Inc.  The subsidiaries are New York-based Playtex Products, Virginia-based American Safety Razor Company and Ohio-based Hewitt Soap Company.

## I.      Background

Joyce Dull was married to the late Harry Dull.  Harry Dull, Lawson and Taylor were American Safety Razor employees.   Joyce Dull, Lawson and Taylor ("the Virginia Plaintiffs") are Virginia residents.   Magdalene Wheeler was married to the late Walter Wheeler.   Walter Wheeler, Richard Fields and Donald Kearns were employed by Playtex in New York.   Magdalene Wheeler, Fields and Kearns ("the New York Plaintiffs") are New York residents.   Irene Dunne and Donald Steely ("the Ohio Plaintiffs") were employed by Hewitt Soap at their Dayton, Ohio factory and are Ohio residents.

The New York Plaintiffs assert that the IUE-CWA, AFL-CIO (the "Union") and another now-defunct bargaining unit were parties to nine collective bargaining agreements with Playtex Products, Inc. with effective dates between 1976 and 2002.   Under these collective bargaining agreements, the New York Plaintiffs retired and were entitled to vested life insurance benefits. *Id.* ¶¶ 47-49 (pp. 18-20).   The New York Plaintiffs claim that their life insurance benefits were improperly terminated on December 31, 2013 (*id.* ¶ 68 (p. 28)), and they therefore purport to bring claims under§ 301 of the LMRA (Count II) and ERISA § 502(a)(l)(B) (Count IV).

In 2007, Energizer Holdings acquired Playtex, LLC ("Playtex"), the successor entity to Playtex Products, Inc. *Id.* ¶ 21 (p. 8).   The New York Plaintiffs identify Energizer Holdings, a Missouri corporation based in St. Louis, Missouri, as the current plan administrator for their Playtex pension fund and the entity that terminated their life insurance benefits. *Id.* ¶ 66 (p. 28).

A second set of claims come from the Virginia Plaintiffs.  They allege that in 2010, Energizer Holdings acquired American Safety Razor Company, including the Verona, Virginia facility where they were employed.  They also allege that American Safety Razor retirees from the Verona facility were covered by a series of collective bargaining agreements executed between 1985 and 2012, which entitle them to "lifetime" life insurance benefits. *Id.* ¶ 30-31 (pp. 13-14). The Virginia Plaintiffs allege that Energizer Holdings also administers their plan and also improperly terminated the life insurance benefits in December of 2013. *Id.* ¶¶ 22, 68 (pp. 8, 28). Energizer Holdings is the parent company of Energizer Personal Care, LLC, which acquired American Safety Razor Company out of bankruptcy in 2010. *Id.* ¶ 65 (p. 27).  The Virginia Plaintiffs bring claims for violation of § 301 of the LMRA (Count I) and also participate in the first ERISA claim, asserting violation of § 502(a)(1)(B) of ERISA (Count IV).

A third set of claims comes from Ohio Plaintiffs, Irene Dunne and Donald Steely, former Union employees at the Hewitt Soap Company's Dayton, Ohio factory. *Id.* ¶¶ 2, 4, 16 (pp. 2-3, 6-7).  Dunne retired from Hewitt Soap in 1995. *Id.*, ¶ 17 (p. 7).   Steely retired in 1996. *Id.*, ¶ 18 (p. 7).   In 2010, Energizer Holdings acquired Hewitt Soap's parent company, American Safety Razor. *Id.* ¶ 21 (pp. 7-8).   The Ohio Plaintiffs allege that Hewitt Soap and a now-defunct bargaining unit of the Union were parties to a series of collective bargaining agreements that granted retirees from the Dayton facility "lifetime retiree medical benefits." *Id.*, ¶¶ 53-56 (pp. 20-23).   Plaintiffs contend that Energizer Holdings currently administers the plan under which benefits are provided to Hewitt Soap retirees.

The Ohio Plaintiffs' first claim is that they should be receiving $136 per month to put toward Medicare supplement insurance premiums, and that they are only receiving $75. *Id.* ¶ 56 (pp. 22-23).

3

The relevant Hewitt Soap collective bargaining agreements state in part:

(a) Article XXIV, Sections One and Five of the 1993-1996 Hewitt Soap CBA contractually provided the following benefits:

1. …For each employee participant, whose hire date is prior to March 23, 1990, who retires during the term of this Agreement under the terms and provisions of the Company's pension plan, the Company will defray the applicable medical insurance premiums for such individual, to a maximum of $6,280.00 per year until such employee becomes eligible for medicare insurance, after which the Company will pay on an annual basis, a maximum of $1,632.00 per year [which equates to $136 a month] for such medicare insurance; should the annual premiums exceed the amounts immediately described then the amount of such excess premium shall be paid by the retiree.

* * * * *

5. The Company may change the carrier or carriers for the insurance program(s) listed above to another carrier or carriers or to a self-insured basis provided the benefit coverage remains essentially the same as the benefits of the program(s) listed above.

(b) Article XXIV, Sections One and Four of the 1996-1999 Hewitt Soap CBA contractually provided the following benefits:

1. …For each employee participant, whose hire date is prior to March 23, 1990, who retires during the term of this Agreement under the terms and provisions of the Company's pension plan, the Company will defray the applicable medical insurance premiums for such individual, to a maximum of $6,280.00 per year until such employee becomes eligible for medicare insurance, after which the Company will pay on annual basis, a maximum of $1,632.00 per year [which equates to $136 a month] for such medicare insurance; should the annual premiums exceed the amounts immediately described then the amount of such excess premium shall be paid by the retiree.

* * * * *

4. The Company may change the carrier or carriers for the insurance program(s) listed above to another carrier or carriers or to a self-insured basis provided the benefit coverage remains essentially the same as the benefits of the program(s) listed above.

4

(c) Article XXVI Sections One and Four of the 1999-2002 Hewitt Soap CBA contractually provided the following lifetime benefits:

1. … Any employee participant who retires during the term of this Agreement under the terms and provisions of the Company's pension plan, the Company will defray the applicable medical insurance premiums for such individuals, to a maximum of $6,500.00 per year until such employee becomes eligible for medicare insurance, after which the Company will pay, on an annual basis, a maximum of $1,632.00 per year [which equates to $136 a month] for such medicare insurance; should the annual premiums exceed the amounts immediately described, then the amount of such excess premium shall be paid by the retiree.

4. The Company may change the carrier or carriers for the insurance program(s) listed above to another carrier or carriers or to a self-insured basis provided the benefit coverage remains essentially the same as the benefits of the program(s) listed above.

(d) Article XXIV, Sections Five and Eight of the 2002-2005 Hewitt Soap CBA significantly changed contractually provided the following lifetime medical benefits to retirees:

5. …Any employee participant who retires during the term of this Agreement under the terms and provisions of the Company's pension plan, the Company will defray the applicable medical insurance premiums for such individuals, to a maximum of $6,500.00 per year until such employee becomes eligible for Medicare insurance. Should the premium exceed the annual amount, then the excess premium amount shall be paid by the retiree.

Retirees that are eligible for Medicare will be issued $75 per month to purchase their own health insurance plan.  *In order to receive this monthly payment, the retiree will be required to provide the Company with proof that he/she has purchased another health insurance plan.*

* * * * *

4.      The Company may change the carrier or carriers for the insurance program(s) listed above to another carrier or carriers or to a self-insured basis provided the benefit coverage remains essentially the same as the benefits of the program(s) listed above.

5

Amend. Compl. ¶ 54, pp. 20-22.   (Emphasis added).

In addition to their complaint that they have been receiving $75 instead of $136 per month since 2002, the Ohio Plaintiffs complain that Energizer acted wrongfully in 2012 by announcing plans to terminate the $75 benefit. See *id.*, ¶¶ 59-63, 77-80, 84-87 (pp. 23-27, 31, 32-33). Although Energizer reversed this decision before it ever took effect, the Ohio Plaintiffs contend that the announcement violated the LMRA and ERISA and entitles them to a declaratory judgment that this benefit cannot be reduced or eliminated in the future. *Id.*, ¶¶ 60-61, 79, 86-87 (pp. 25-26, 31, 33).

Plaintiffs filed a complaint in this Court on June 18, 2014. Doc. 1.   In response, Defendants filed Defendants' Motion to Dismiss Third and Fifth Causes of Action Alleged in Plaintiffs' Class Action Complaint and to Transfer Remaining Causes of Action to the Eastern District of Missouri. Doc. 15.   In response to this, Plaintiffs filed Amended Class Action Complaint. Doc. 18.   Defendants then filed the motion currently under review, Defendants' Motion to Transfer the First, Second and Fourth Causes of Action Alleged in Plaintiffs' Amended Class Action Complaint (Doc No. 18) and to Dismiss Remaining Causes of Action. Doc. 23.   A response, doc. 24, and a reply, doc. 27, having been filed, the motion is ripe for decision.

## II.    Standard

Under § 301(a) of the LMRA, "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties." 29 U.S.C. § 185(a).

An action brought under § 502 of ERISA, "may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found." 29 U.S.C. § 1132(f).

Where a case involves more than one cause of action, venue must be proper as to each claim. *Walden v. Locke*, 629 F. Supp. 2d 11, 15 (D.D.C. 2009); *Salpoglou v. Shlomo Widder, M.D., P.A.*, 899 F. Supp. 835, 839 (D. Mass. 1995).

Federal Rule of Civil Procedure 12(b)(6) authorizes the court to dismiss a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) tests the sufficiency of the claim for relief, "and as such, it must be understood in conjunction with Rule 8(a), which sets out the federal standard for pleading." *Hutchison v. Metro. Gov't of Nashville and Davidson Cnty.*, 685 F. Supp. 2d 747, 748–49 (M.D. Tenn. 2010) (citing 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (3d ed. 2004)). In reviewing the complaint, the court construes the complaint in the light most favorable to the plaintiff and must accept all well-pleaded factual allegations as true. *La. Sch. Emps.' Ret. Sys. v. Ernst & Young, LLP*, 622 F.3d 471, 477–78 (6th Cir. 2010). "Under Federal Rule of Civil Procedure 8(a)'s pleading standard, a plaintiff must provide 'a short and plain statement of the claim showing that [he] is entitled to relief.'" *Ashland, Inc. v. Oppenheimer & Co., Inc.*, No. 10–5305, 2011 WL 3181277, at *3 (6th Cir. July 28, 2011). "Yet the complaint must include more than 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action,' ... and instead proffer 'enough facts to state a claim to relief that is plausible on its face[.]'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)); see also *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

"Standing requires: 1) that the plaintiff has suffered an injury in fact which is a) concrete and particularized and b) actual or imminent, not conjectural or hypothetical; 2) that a causal connection exists between the injury and the conduct complained of; and 3) that it is likely that the injury will be redressed by a favorable decision." *Columbus Cmty. Cable Access, Inc. v. Luken*, 923 F. Supp. 1026, 1028 (S.D. Ohio 1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). "[T]he basic rationale of the ripeness doctrine 'is to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements.'" *National Rifle Ass'n v. Magaw*, 132 F.3d 272, 284 (6th Cir. 1997) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580 (1985)). "Ripeness becomes an issue when a case is anchored in future events that may not occur as anticipated, or at all." *Id.* "Ripeness is, thus, a question of timing." *Id.* "Federal judicial power is to be exercised where the complaint alleges that plaintiff is 'immediately harmed, or immediately threatened with harm, by the challenged action.'" *D & F Corp. v. Board ofTrs. of Pattern & Model Makers Ass'n of Warren & Vicinity Defined Benefit Pension Plan,* 795 F. Supp. 825, 839 (E.D. Mich. 1992) (quoting *Poe v. Ullman,* 367 U.S. 497, 504 (1961)). In the absence of a proper case or controversy, a "plaintiffs' action for declaratory judgment is no more than a request for an advisory opinion which this court is not authorized to render." *Columbus Cmty. Cable Access, Inc.,* 923 F. Supp. at 1030.

## III. Analysis

Defendants assert that venue is improper, as the entire action should have been brought in Missouri. Indeed, Defendants go further, asserting that Plaintiffs' third and fifth claims, the claims brought on behalf of the Ohio Plaintiffs, fail to state a claim and are only included in the complaint in an attempt to create plausibly proper venue.

Plaintiffs' Amended Complaint alleges that venue in this Court is proper under 28 U.S.C. § 1391(b) and the LMRA, 29 U.S.C. §§ 185(c) and ERISA, 29 U.S.C § 1132(e). Plaintiff IUE-CWA, a party to the Ohio Plaintiffs' collective bargaining agreements and the Virginia Plaintiffs' collective bargaining agreements, maintains its principal office within this District and Division of the Court. (Doc. No. 18, ¶¶ 7 & 19; Bollepalli Decl. ¶¶ 2 & 4, Exs. A & B.) Plaintiffs further allege that the actions relevant to the Ohio Plaintiffs occurred in this District, and point out that Ohio Plaintiffs Irene Dunne and Donald Steely reside in Centerville and Dayton, Ohio, respectively. (Doc. No. 18, ¶ 7.)

Plaintiffs assert that the remaining claims can be brought in Ohio based upon the presence in the Southern District of Ohio of another Energizer subsidiary, Energizer Battery Manufacturing and a facility in Franklin County, Suncare Sales National Office Playtex Products, Inc.1

### A.  Ohio Plaintiffs' Claims

By retiring under the terms of the Hewitt Soap Pension Plan, Hewitt Soap employees who retired from their jobs in Ohio were eligible for a lifetime monthly payment of $136.00 or a maximum of $1,632.00 per year under the 1993 – 1996, 1996 – 1999 and 1999 – 2002 Hewitt Soap

---

1 Plaintiffs posit another argument, that Defendants waived any objections to venue or personal jurisdiction by failing to raise these issues in Defendants' prior motion to transfer with respect to the original complaint. (Doc. 15). Doc. 24 at 12-13. The venue and jurisdiction arguments played a central role in Defendants' prior motion. See, e.g., Doc. 15 at 11 n.15 (asserting that "there are multiple grounds for dismissal or transfer, and these grounds include the dismissal of Counts I, III, and IV for improper venue pursuant to Fed. R. Civ. P. 12(b)(3)."); id. at 13 n.7 (asserting that "[f]or the same reasons discussed below with regard to venue, all of the Virginia and New York Plaintiffs' claims can also be dismissed for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure."); id. at 10-17 (explaining how venue and personal jurisdiction were improper in this Court with respect to Causes of Action I, II, and IV). Docket entry 15 was entitled "Motion to Dismiss Third and Fifth Causes of Action Alleged in Plaintiffs' Class Action Complaint and to Transfer Remaining Causes of Action to the Eastern District of Missouri."

collective bargaining agreements and a lifetime monthly payment of $75.00 to offset the cost of private health insurance under the 2002 – 2005 Hewitt Soap collective bargaining agreement.

On September 19, 2012, Energizer advised the IUE-CWA retirees from the Dayton Factory that it was unilaterally terminating the monthly allowance that they receive under the Hewitt Soap Retiree Plan as reimbursement for their medical costs.   On November 6, 2012, IUE-CWA wrote a letter to the Energizer Human resources department, pointing out to them that, in acquiring the bankrupt Hewitt Soap company, it acquired its obligations as well, including employee pension obligations.   Amend. Compl. ¶ 59.

This prompted Energizer, in December 2012, to inform the IUE-CWA that "Certain retirees have received $150 monthly payments, rather than the $75 monthly payments called for by the collective bargaining agreement.   Going forward, Energizer will only pay $75 per month in accordance with the clear terms of the [collective bargaining agreement]." ¶¶ 60, 61.2

To the extent that Plaintiffs seek a declaration that Defendants may not reduce or eliminate benefits in the future, such claims are not ripe and will be dismissed for failure to state a claim. The Ohio Plaintiffs' declaratory judgment claims are not based on any immediate threat of harm. Rather, they assert that in 2012 Energizer Holdings decided to terminate these benefits, then reversed this decision before the termination went into effect. Am. Compl. ¶¶ 59-63 (pp. 23-27).

---

2 Defendants contend in a footnote that the Ohio Plaintiffs' Claims can be dismissed because ¶ 60 of the Amended Complaint quotes Defendants' admission that "certain retires…will only [be paid] $75 per month in accordance with the clear terms of the CBA" does not specify anyone who is currently suffering from Defendants' actions. Defendants seem oblivious to the immediately preceding paragraphs of the Amended Complaint, which state:

> 57. Plaintiff Dunne retired under the Hewitt Soap Pension Plan in 1995 and is eligible for a lifetime monthly payment of $136.00 to offset the cost of private health insurance.

> 58. Plaintiff Steely retired under the Hewitt Soap Pension Plan in 1996 and is eligible for a lifetime monthly payment of $136.00 to offset the cost of private health insurance.

This dispute ended in 2012. The Amended Complaints' assertion that "the retirees…, having once been told that their benefits were terminated, remain fearful that these benefits will again be taken away.," *id.*¶ 60, does not create an Article III controversy.

As regards the Fifth Cause of Action, Plaintiffs decry that Defendants reduced Dayton factory retirees medical benefits from $136 a month to $75 a month. Am. Compl. ¶ 85. Defendants, somewhat disingenuously, posit "The CBAs that they allege apply to their claims only impose a cap on the amount that the Company would pay toward these premiums; they do not impose any minimum level of benefit." Doc. 23 at 9, PAGEID 177. Thus, Defendants claim that the relevant collective bargaining agreements allow them to do so. Doc. 23, at 21, PAGEID 189.

The 1993-1996 Hewitt Soap collective bargaining agreement actually states that "the Company will defray the applicable medical insurance premiums for [each employee participant, whose hire date is prior to March 23, 1990, who retires during the terms of the Agreement under the terms and provisions of the Company's pension plan], to a maximum of $6,280.00 per year until such employee becomes eligible for medicare insurance, after which the Company will pay on [an] annual basis, a maximum of $1,632.00 per year for such medicare insurance .... " *Id.* ¶ 54(a) (pp. 20-21) (emphases added). The 1996-1999 collective bargaining agreement language is identical. *Id.*, 54(b) (p. 21). The relevant provision of the 1999-2002 collective bargaining agreement (which Plaintiffs do not assert applies to their claims) is the same in all respects to these, except that it increased the maximum payment for non-Medicare eligible retirees to $6,500 per year (from $6,280). *Id.* 54(c) (pp. 21-22).

According to Defendants, "Not until 2002 was language adopted that unequivocally obligated Hewitt Soap to pay a particular amount to defray medical insurance premiums during the term of the agreement, which payment was conditioned for the first time on participants providing

proof that they had purchased supplemental insurance." The 2002-2005 agreement stated that "[r]etirees that are eligible for Medicare will be issued $75 per month to purchase their own health insurance plan. In order to receive this monthly payment, the retiree will be required to provide the Company with proof that he/she has purchased another health insurance plan." *Id.*, ¶ 54(d) (p. 22).

Defendants do correctly point out that Plaintiffs do not contend that they ever submitted proof that they had purchased another health insurance plan and do not plead what any insurance that they might have purchased cost, leaving a doubt that Defendants' erroneous reading of the collective bargaining agreement terms has yet caused any damage to any particular Plaintiff. Plaintiffs will be granted leave to amend their complaint to cure this shortcoming on this claim.

**B.      Claims of Virginia and New York Plaintiffs**

In Count I, the Virginia Plaintiffs allege that the life insurance benefits they bargained for from American Safety Razor Company were terminated in December of 2013 in violation of § 301 of the LMRA. In Count II, the New York Plaintiffs claim that their life insurance benefits they contracted with Playtex for were improperly terminated on December 31, 2013 (*id.* ¶ 68 (p. 28)),in violation of § 301 of the LMRA.   In Count IV, the Virginia and New York Plaintiffs both assert that their life insurance benefits were improperly terminated on December 31, 2013 (*id.* ¶ 68 (p. 28)) in violation of ERISA.   Defendants assert that the Southern District of Ohio is an improper venue for these three claims and that, therefore, these claims must be transferred or dismissed under 28 U.S.C. § 1406(a).

Under 29 U.S.C. § 1132(e)(2), an ERISA claim "[1] may be brought in the district where the plan is administered, [2] where the breach took place, or [3] where a defendant resides or may be found."   The Southern District of Ohio is none of these.

None of the plans at issue in the New York or Virginia Plaintiffs' claims are administered in Ohio.   The complaint alleges that the New York Plaintiffs' plan is administered in St. Louis, Missouri, while the Virginia plan is allegedly administered in Virginia.3   Amend. Compl, ¶ 22, PAGEID 119.   Thus, the place of plan administration does not support venue in the Southern District of Ohio. See 29 U.S.C. § 1132(e)(2).

Next, none of the alleged breaches described in Count IV occurred in Ohio.   For purposes of ERISA 29 U.S.C. § 1132, a breach "takes place" where the plaintiff receives his or her benefits. *Keating v. Whitmore Mfg. Co.*, 981 F. Supp. 890, 892-93 (E.D. Pa. 1997).   Each of the New York and Virginia Plaintiffs live in either New York or Virginia. Am. Compl. ¶¶ 9-15 (pp. 4-6). Accordingly, the Southern District of Ohio cannot serve as a proper venue for Count IV based on the location of the alleged breach. See 29 U.S.C. § 1132(e)(2).

Finally, Energizer Holdings neither "resides" nor "may be found" in Ohio within the meaning of 29 U.S.C. § 1132(e)(2). "A defendant 'resides or may be found,' for ERISA venue purposes, in any district in which its 'minimum contacts' would support the exercise of personal jurisdiction" within the limitations of the Due Process Clause of the Fourteenth Amendment. *Moore v. Rohm & Haas Co*., 446 F.3d 643, 646 (6th Cir. 2006) (citing W*aeltz v. Delta Pilots Ret. Plan*, 301 F.3d 804, 810 (7th Cir. 2002) ("A fund can be found in a judicial district if it has the sort of 'minimum contacts' with that district that would support the exercise of personal jurisdiction under the rule of *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945).")). Ohio has neither general nor specific personal jurisdiction over Energizer Holdings with respect to Count IV.

---

3 Defendants assert that all of the contested plans are administered in Missouri.

"[O]nly a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014). "'For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home.'" *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853-54 (2011)). "With respect to a corporation, the place of incorporation and principal place of business are paradig[m]…bases for general jurisdiction." *Id.* (internal quotation omitted). "Those affiliations have the virtue of being unique that is, each ordinarily indicates only one place-as well as easily ascertainable." *Id.* Only in an "exceptional case" might a different forum have general jurisdiction over a defendant. *Id.* at 761 n.19. Energizer Holdings is incorporated under Missouri law and has its principal place of business in St. Louis, Missouri. Am. Compl. ¶ 21 (pp. 7-8). Therefore, Ohio courts do not have general jurisdiction over Energizer Holdings. The activities in the district of other subsidiaries of Energizer Holdings does not change this analysis.

Neither is Energizer Holdings subject to specific jurisdiction in Ohio with respect to Count IV. To satisfy the Due Process Clause of the Fourteenth Amendment, a non-resident of a state "generally must have 'certain minimum contacts ... such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" *Id.* (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)) (emphasis added). "Specific jurisdiction…depends on an 'affiliatio[n] between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State and is therefore subject to

14

the State's regulation." *Goodyear*, 131 S. Ct. at 2851. "[I]t is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Walden*, 134 S. Ct. at 1122. "[A] defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Id.* at 1123.

As to Count IV, the New York and Virginia Plaintiffs seek to hale Energizer Holdings into a court in Ohio for actions unrelated to any "activity," "occurrence," or "conduct" of Energizer Holdings in Ohio. Count IV solely concerns Missouri resident Energizer Holdings' relationships with the New York and Virginia Plaintiffs, all of whom seek benefits under collective bargaining agreements established through their respective employment in New York and Virginia, and who continue to reside in New York and Virginia.

Specific jurisdiction does not concern generalized "minimum contacts," but rather sufficient contacts with the forum with respect to the claim at issue. *Goodyear*, 131 S. Ct. at 2851; *Walden*, 134 S. Ct. at 1122. Count IV does not involve any contacts with Ohio. The fact that the New York and Virginia Plaintiffs have joined their claims with claims brought by the Ohio Plaintiffs cannot serve to "anchor" this lawsuit in the Southern District of Ohio because Energizer Holdings neither "resides" nor "may be found" in Ohio within the meaning of 29 U.S.C. § 1132(e)(2). See *Moore*, 446 F.3d at 646. For these reasons, Count IV will be dismissed for lack of venue under 28 U.S.C. § 1406(a).

Counts I and II of the amended complaint arise under the LMRA. The LMRA venue provision states:

> (a) Venue, amount, and citizenship
>
> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor

> organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185.

Venue under the LMRA is broad, but not limitless. First, as already discussed, the Court does not have general or specific jurisdiction over Energizer Holdings with regard to claims arising out of termination of benefits to the New York Plaintiffs or the Virginia Plaintiffs. The same analysis applies to Playtex. Playtex is a Delaware corporation with a principal place of business in New Jersey, Am. Compl. ¶ 24 (p. 9), so there is no general jurisdiction over Playtex in Ohio. *Daimler AG*, 134 S. Ct. at 760. Moreover, the allegations in Count II regarding Playtex bear no connection to the State of Ohio to support a finding of specific jurisdiction. Count II concerns Playtex's interaction with retired factory workers who worked in a New York factory and continue to live in New York. Am. Compl. ¶¶ 12-15 (pp. 5-6). Playtex engaged in no "activity," "occurrence," or "conduct" related to Count II sufficient for a court in Ohio to exercise personal jurisdiction over Playtex consistent with the Due Process Clause of the Fourteenth Amendment. *Walden*, 134 S. Ct. at 1121-22; *Goodyear*, 131 S. Ct. at 2851. Accordingly, there is no basis for the exercise of personal jurisdiction over Playtex in the Southern District of Ohio, meaning that venue is likewise improper under 29 U.S.C. § 185(a).

Neither is there personal jurisdiction over Energizer Personal Care. Energizer Personal Care is a Delaware company with its principal place of business in Connecticut, so there is no general jurisdiction in Ohio. Am. Compl. ¶ 23 (pp. 8-9). Count I's allegations regarding Energizer Personal Care, the successor to American Safety Razor Company, also bear no connection to Ohio, since they relate to the obligations imposed by collective bargaining

agreements negotiated with workers who worked in Virginia governing work performed in Virginia. *Id.* ¶¶ 65-69 (pp. 24-25). Accordingly, the Court does not have specific jurisdiction over Energizer Personal Care.

Contrary to Plaintiffs' assertion, the fact that Plaintiff IUE-CWA has its office in this district also does not make this a proper venue for the New York and Virginia Plaintiffs' LMRA claims. The LMRA's venue statute requires the court to have jurisdiction "of the parties," 29 U.S.C. § 185(a), not just "of the plaintiff."   However, the provision of the LMRA that provides for venue where a union is located does so for purposes of suits filed against a union – not where the union is a plaintiff. See *Int'l Union, U.A.W. v. Aluminum Co. of Am.*, 875 F. Supp. 430, 432 (N.D. Ohio 1995) (noting that "the purpose of statutorily specified venue is to protect the defendant against the risk that a plaintiff will select an unfair or inconvenient place of trial.").

Thus, the allegations against Energizer Holdings, Playtex, and Energizer Personal Care in Counts I and II will be dismissed due to improper venue under 28 U.S.C. § 1406(a).

**VI.    Conclusion**

Defendants' Motion To Transfer The First, Second, And Fourth Causes Of Action Alleged In Plaintiffs' Amended Class Action Complaint and to Dismiss Remaining Causes Of Action. (Doc 23), is **GRANTED IN PART AND DENIED IN PART**.  Plaintiffs' First, Second And Fourth Claims are Dismissed without prejudice due to improper venue.  Plaintiffs are **GRANTED** until October 2, 2015 to amend their Third and Fifth Causes of Action to allege that a Hewitt Soap employee has incurred more than $75 a month for insurance coverage.

**DONE** and **ORDERED** in Dayton, Ohio, on Wednesday, September 9, 2015.


                                                    s/Thomas M. Rose
                                        _____
                                                  THOMAS M. ROSE
                                        UNITED STATES DISTRICT JUDGE